IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JUAN CARLOS VAZQUEZ, | ) | C/A No. 4:06-1302-GRA-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| COLIE RUSTON, WARDEN | ) | |
| McCORMICK CORRECTIONAL | ) | |
| INSTITUTION; AND HENRY McMASTER | ) | |
| ATTORNEY GENERAL FOR SOUTH | ) | |
| CAROLINA, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Juan Carlos Vazquez, ("petitioner/Vazquez"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on May 1, 2006. Respondents filed a motion for summary judgment on September 11, 2006, along with a return and supporting memorandum. The undersigned issued an order filed September 12, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response to respondents' motion for summary judgment on October 11, 2006.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I. PROCEDURAL HISTORY

The facts and procedural history as set forth by respondents in their memorandum have not been seriously disputed by petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history as set forth by respondents.

The petitioner, Juan Carols Vazquez, is presently confined at the McCormick Correctional Institution of South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for the State Grand Jury. He was indicted by the State Grand Jury on October 8, 1996, for Conspiracy to Traffick in Four Hundred Grams or More of Cocaine (96-GS-47-15). James Griffin, Esquire, represented the Applicant. On April 24, the Applicant proceeded to a trial by jury, at the conclusion of which he was found guilty. The Honorable Larry R. Patterson sentenced him to confinement for a period of thirty (30) years and fined two hundred thousand dollars ($200,000.00).

The petitioner made a direct appeal to the South Carolina appellate courts. In the appeal, he was represented by counsel Griffin. In his Final Brief of Appellant, he raised four issues, including a claim that the lower court erred by prohibiting Vasquez from cross-examining O. B. Harris about his understanding of the plea agreement. See Final Brief of Appellant, p. 6-9. Final Brief of Respondents, p. 3-12. (Question I).

The South Carolina Court of Appeals affirmed his conviction and sentence. State v. Vasquez, 341 S.C. 648, 535 S.E.2d 465 (Ct.App. 2000). In the opinion, the Court of Appeals concluded that the issue was procedurally barred because it was not raised in the trial court by appropriate objection. Order, p. 3, See, State v. Castineirna, Op. No. 3216 (S.C.Ct. App. July 17, 2000). See App.p. 90-91. The Applicant then filed a petition for rehearing, on July 28, 2000, raising this issue. The Court of Appeals denied the issue on August 16, 2000.

2

The petitioner next sought certiorari in the South Carolina Supreme Court by petition for writ of certiorari on October 18, 2000, asserting: "the court of appeals erred in holding that appellant's Sixth Amendment claim was procedurally barred, since the trial judge ended defense counsel's cross-examination of the state's key witness by strongly implying that counsel was misleading the jury." Petition, p. 2. The Supreme Court of South Carolina denied the Applicant's petition for certiorari on June 8, 2001. The remittitur was sent from the Court of Appeals on June 12, 2001.

The petitioner next made an application for post-conviction relief on June 25, 2001. In the application, he raised a claim of ineffective assistance of counsel in that trial and appellate counsel failed to adequately investigate the charges, failed to investigate and prepare potential witnesses for defense, failed to research and prepare available defenses to the charges, and counsel failed to object to trial court error and failed to adequately cross-examine witnesses presented by the state. The respondent made its Return on December 5, 2001. An evidentiary hearing into the matter was convened on October 22, 2003, at the Greenville County Courthouse. The Applicant was present at the hearing and was represented by Stephen J. Henry, Esquire, of the Greenville Bar. The respondent was represented by Christopher L. Newton of the South Carolina Attorney General's Office. At the hearing, the Applicant testified on his own behalf, as did Gustavo Castineira. Testifying on behalf of the State was James Griffin, Esquire. App.p. 13-70. The PCR Court also had before it a copy of the transcript of the proceedings against the Applicant, the records of the Greenville County Clerk of Court and the Applicant's records from the South Carolina Department of Corrections. On December 23, 2003, the Honorable Edward W. Miller entered his Order of Dismissal. App.p. 113-118.

The petitioner made an appeal from the denial of post-conviction relief to the South Carolina Supreme Court. On September 23, 2004, appointed appellate counsel Robert M. Pachak made a petition for writ of certiorari raising the following ground for relief:

> Whether trial counsel was ineffective in failing to object to the trial court's limitation on petitioner's right of confrontation by limiting cross-examination of a co-constrictor witness's understanding of his plea agreement?

Petition, p. 2. The respondents made a Return to the Petition. On April 11, 2005, the Court entered an order directing that Vasquez advise them within 20 days of whether he wished to proceed pro se and if so to file a *pro se* petition, based upon a request made to relieve counsel. On May 19, 2005, the petitioner made a *pro se* petition for writ of certiorari alleging:

1. PCR court failed to rule on all issues.

2. Trial counsel was ineffective in failing to object to the trial court's limitation on petitioner's right of confrontation by limiting cross-examination of a coconspirator witness's understanding of his plea agreement?

3. Trial counsel was ineffective in failing to object to prosecutor's leading the witness?

4. Trial counsel was ineffective in failing to object to the trial court's failure to address prejudice against foreign national / racial discrimination?

5. Trial counsel was ineffective for failing to subpoena defense witness (Castineira) to testify on petitioner's behalf?

Pro Se Petition for Writ of Certiorari. The respondents moved to strike to the petition. On August 12, 2005, the South Carolina Supreme Court entered its order that denied the state's motion to strike, denied the petition for writ of certiorari and found as moot the state's motion to hold the time for filing a return in abeyance. The remittitur was entered on August 31, 2005.

4

## II. PETITIONER'S GROUNDS FOR RELIEF

In his pro se Petition for Writ of Habeas Corpus, petitioner raises several grounds pertaining to ineffective assistance of trial counsel. Petitioner also argues that the PCR court failed to rule on all issues presented and PCR counsel was ineffective for not filing a Rule 59(e) motion.

## III. SUMMARY JUDGMENT

On September 11, 2006, the respondents filed a return and memorandum of law in support of their motion for summary judgment. Petitioner responded to the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

5

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### IV.  STANDARD OF REVIEW

Since Vazquez filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st  Cir. 1998) ("the

6

AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V. FACTS

The South Carolina Court of Appeals set out a thorough discussion of the facts which will be repeated herein.

> The prosecution of Va[z]quez and twenty-five co-defendants was the culmination of a two year State Grand Jury (SGJ) investigation. The investigation began in August 1993, when police arrested Michael Greer on a cocaine charge and executed a search warrant at his residence. Over the next two years, police followed the chain of Greer's suppliers, continuing to make purchases and turning those arrested into cooperating informants.
>
> The investigation eventually led to O'Bryant (O.B.) Harris. The officers arrested O.B. on August 31, 1996, after they observed a transaction involving an undercover drug payment of $115,000. Once

arrested, Harris cooperated, identifying Jose Gustavo Castineira as his source. Officers arranged an undercover payoff to Castineira for cocaine previously supplied on September 1, 1996. Castineira and Vazquez, both Cuban residents of Miami, arrived in a Mercedes Benz being driven by Castineira after a brief (recorded) conversation in which Castineira discussed a large cocaine deal, Castineira placed the money in his vehicle. Castineira and Vazquez were then arrested.

On October 8, 1996, the SGJ indicted twenty-six defendants for conspiracy to traffic in 400 or more grams of cocaine pursuant to S.C. Code Ann. 44-53-370(e)(2)(e) (Supp. 1999). Eighteen defendants pled guilty and the remaining eight were tried together during a two-week period in late April-early May 1997, including Vazquez. The trial court denied Vazquez's motion for severance.

At the close of the State's case, Vazquez moved to dismiss the indictment, arguing there was a material variance between the conspiracy alleged in the indictment and the multiple conspiracies proved by the State at trial. He also moved for a directed verdict on the following grounds:(1) there was no evidence showing he was involved in the single conspiracy alleged; (2) his mere presence at the garage meeting did not indicate he was a co-conspirator; and (3) he could not be convicted based on the transaction at the garage because it is impossible to conspire with government agents. The trial court denied these motions. Vazquez renewed all his motions at the close of the defense and again, the trial court denied each one. The jury convicted Vazquez of conspiracy to traffic 400 or more grams of cocaine and the trial court sentenced him to thirty years imprisonment and a $200,000 fine.

(South Carolina Court of Appeals opinion #3217).

## VI.  MERITS

## A. GROUND ONE

Petitioner raises the following issue in ground one, quoted verbatim:

Ground One:    Petitioner received ineffective assistance of counsel where counsel failed to object to trial court's limitation of petitioner's right to confront witness.

8

Petitioner was tried in a State Grand Jury case along with multiple co-defendants for conspiracy to traffic in 400 or more grams of cocaine. The police had previously arrested O.B. Harris on August 31, 1996, in a drug deal. Harris told police Jose Gustavo Castineira was his source. The police arranged for an undercover buy. Castineira arrived at the scene for a pay off. He was driving and petitioner was a passenger. Castineira discussed a large cocaine deal with Harris and Harris gave him the money. Castineira came from the testimony of Harris. It was Harris' testimony and his credibility that was at stake in front of the jury.

Near the end of defense counsel' cross-examination of Harris, he attempted to quiz Harris about his understanding of his plea agreement and the limitations on sentencing him under the plea agreement. The trial judge interrupted this line of questioning and defense counsel did not object and just ended his cross-examination.

The issue of the trial court's limitation on cross-examining Harris on his understanding of his plea agreement was raised on direct appeal. The Court of Appeals held that the issue was not preserved for appellate review because defense counsel did not object to the trial court's intervention.

Defense counsel testified at the PCR hearing that outside of Harris as a witness, the state only proved that petitioner was merely present along a ride in a car with Castineira. Petitioner never spoke throughout the meeting between Harris and Castineira. Defense counsel said he did not think Harris was a very credible witness. He recalled being interrupted by the trial judge while he was cross-examining Harris at trial. He thought when he got cut off, he did not have to preserve the issue for appellate review by objecting to being cut off.

On cross-examination, defense counsel testified that the state's case hinged on Harris and that it was a weak case. He thought his cross-examination of Harris over his plea agreement was a very fair cross. He thought he did not have to object when the trial judge interrupted him, and if he had it to do over again, he would have done it differently.

(Petition)

9

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); See Williams v. Taylor, 529 U.S. at 398.  If, however, "a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits . . . , our review of questions of law and mixed questions of law and fact is de novo." Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999).

This issue was presented at PCR and on appeal from the PCR Court. Therefore, the deferential standard applies.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

11

Respondents assert that petitioner has met the first prong of <u>Strickland</u>, <u>supra</u>, according to the state PCR court. Respondents contend that deficient performance by his trial counsel was found that led to the cross-examination issue not being preserved for appeal. However, respondents submit petitioner failed to meet the second prong of <u>Strickland</u>, <u>supra</u>.  Respondents argue that the evidence against petitioner was substantial, and trial counsel, even though he was interrupted, thoroughly cross-examined O.B. Harris. Therefore, respondents argue there was no prejudice to the petitioner, as the objection was not reasonably likely to create a different result.

A review of the decision of the PCR judge reveals the following findings:

> This Court finds only one instance of deficient performance established by the record in this case. Trial counsel erred in not objecting to the trial court's interruption of his cross-examination. Other than that instance, this Court finds that trial counsel's performance did not fall below reasonable professional standards. This Court does not find the reference to the Applicant as "Cuban" to be objectionable so as to render a failure to object to be deficient performance. With regard to the failure to object to the interruption of cross-examination, this Court finds no prejudice arising from counsel's failure. There is no reasonable likelihood of a different result but for the error. Trial court comments and interruptions have been held to be non-prejudicial in more extreme situations than the instant case. In <u>State v. Jernigan</u>, 156 S.C. 509, 153 S.E. 480 (1930), the trial court's interruption of cross-examination of the State's witness during a question about reputation and subsequent questioning of the defendant was held not to have been prejudicial. The trial court in <u>Jernigan</u> intervened in that case to a far greater degree than did the trial court in the case at bar. Furthermore, in <u>State v. Tuckness</u>, 257 S.C. 295, 185 S.E.2d 607 (1971), the Supreme Court of South Carolina held that a trial court's admonition to a defendant's psychiatrist regarding the psychiatrist's smiling during testimony, was not sufficiently prejudicial to warrant a mistrial. Therefore, even if trial counsel had objected, this Court finds that there was no prejudice to the Applicant's case to warrant a mistrial or a new trial. The Applicant has failed to carry his burden in this case, and the application must be denied and dismissed.

(App.p. 116-117).

The PCR court found that petitioner met the first prong of <u>Strickland</u> in that trial counsel erred in not objecting to the trial court's interruption of his cross-examination of Harris. Assuming trial court error and counsel's concomitant failure to object, the court looks to see if the second prong has been met. Based on the record, plaintiff has failed to show prejudice from his trial attorney not objecting to the court's interruption of his cross examination of Harris. Even if his trial attorney had objected, petitioner fails to show the proceeding was fundamentally unfair or unreliable. A review of the transcript of record reveals that Witness Harris had already been questioned by the prosecutor and another defense attorney concerning his plea agreement in return for his testimony. For example, Harris testified during direct examination by the prosecutor that he had pleaded guilty pursuant to an agreement wherein he expected to go to jail for three to ten years because he decided to cooperate and provide his source of drugs. (Trial Tr. 583-584). Upon cross-examination by defense attorney Tunkey,  Harris was asked how he was able to limit his punishment when he had declared himself guilty of distributing more than twenty-eight grams of cocaine. Harris testified that he was made an offer by the State Attorney General and in return he promised to come and testify. Upon cross-examination by petitioner's trial counsel, J. Griffin, Harris was questioned and testified that he knew he was in a lot of trouble when he was "busted" and he agreed to cooperate with SLED agents so that he would get a lesser sentence. (Trial Tr. 742). Therefore, the jury had already been informed that Harris had entered into a plea agreement to obtain a lesser sentence in return for his testimony and could make their determination as to his credibility.

Therefore, based on the evidence, it is mere speculation that the objection would have yielded a different result. There was substantial evidence to convict petitioner and the jury had already heard

several times that Witness Harris was testifying pursuant to a plea agreement in hopes of getting a lesser sentence. The state's court's decision was not contrary to, or involve an objectively unreasonable application of federal law. Based on the above, it is recommended that respondents' motion for summary judgment be granted with respect to this issue.

## B.  GROUND TWO

Plaintiff raises the following issue as ground two in his habeas petition:

> Petitioner's conviction is unconstitutional where he was provided with ineffective assistance of counsel where counsel failed to object to prosecutor's leading the witness and failed to object to trial court's failure to address prejudice against foreign national/racial discrimination.

> The key incident leading to the conspiracy indictment took place at the Harris Brother's Body Shop. Although no money or drugs changed hands in this drug deal, there was a taped conversation, which was the heart of the state's case. The conversation was in English and took place between "Gus" and the operatives. No drugs were found on the applicant or in the car. The applicant made no confession. The applicant, who can speak little English, and who spoke no English at the time of the arrest or trial, was a driver for co-defendant Gustavo and Castineira. His defense was that he was not a participant or aware of any drug transaction.

Petitioner argues that the evidence presented at trial against him consisted of Harris' testimony. Petitioner contends that the other defendants that were present at trial and witnesses testified about the other defendants' involvement but for most of the trial, the applicant was not mentioned. Therefore, petitioner argues that the prosecutor knew the case against him was weak and depended upon "giving a false impression to the jury that the applicant was directly involved in drug dealing." Thus, petitioner argues the prosecutor repeatedly used leading questions or outright statements of

his own during direct examination to inject petitioner's name into the trial in an unfavorable light and used his direct examination to mislead the jury about the applicant's participation and his attorney failed to object. Petitioner also argues the prosecutor used racial characterizations of the petitioner as "Cubans from Miami." (Petition). Petitioner asserts that the racial comments were contained in questions from the prosecutor not the witnesses and defense counsel let them stand without objection.

Petitioner goes on to argue as follows:

> Additionally, and according to defense counsel's testimony, during the hearing, there was evidence of actual prejudice. Information received from an alternate juror indicated that the "the Cuban" reference made by the prosecutor hit their target. Although the alternate juror felt that the case against applicant was weak, the fact that he was a Cuban would have led him to convict.

> To compound the prejudice to the applicant, defense counsel's proper attempt to have voir dire on racial prejudice was rejected by the trial judge. But, defense counsel failed to object to the judge's failure to ask questions about potential racial or ethnic bias.

(Petition).

Respondents argue the issue was addressed by the PCR court which found petitioner had failed to prove counsel was ineffective in failing to object to the Cuban references. Respondents assert that the references made by the prosecutor in each of the questions were not leading but were foundational inasmuch as such evidence was already in the record through other testimony. As to the Cuban references, respondents argue the brief unobjected references to the petitioner and his co-conspirator as Cuban do not create constitutional omissions of deficient performance. Respondents first argue that petitioner was a Cuban from Miami and second, the references were those of identity, not of an intent to inject nation bias against the defendant. Respondents assert defense counsel

acknowledged that he did not object to the comments, although he noted that he could have objected to the gratuitous use of the phrase "Cubans." (Tr. 59-60). Respondents argue that failure to object to leading questions has been resolved as trial strategy not to be second-guessed by the courts. *Citing* Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993). Therefore, respondents assert petitioner has failed to show that counsel was constitutionally deficient or that 6th Amendment prejudice arose from the omission.

As previously discussed, if the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); See Williams v. Taylor, 529 U.S. at 398. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

A review of the PCR hearing reveals trial counsel testified that he had not tracked the record to see how many times he objected to leading questions or perhaps did not object at all. However, trial counsel testified that prior to the trial of this case, the prosecutor re-tried "a case the Court of

16

Appeals reversed because he had made some inflammatory comments in closing statements. And so, you know, I was on the lookout for that. And I think he was on the lookout to try to be on his P's and Q's, but it's his nature... to do that." (PCR Tr. 58).  Trial counsel was questioned upon cross-examination about specific references made by the Prosecutor to "Cubans" and questioned as to whether or not he should have objected. Trial counsel testified that some of the remarks were gratuitous and he could have objected but did not state that he should have objected. Trial counsel did testify that he presented voir dire questions pertaining to any prejudices towards Cuban immigrants. However, he testified that the trial judge refused to ask his two specific questions pertaining to nationality. (PCR Tr. 53-56).

As set out above, the PCR judge concluded that there was only one instance of deficient performance established by the record, that trial counsel erred in not objecting to the trial court's interruption of his cross-examination. Other than that instance, the PCR court concluded that trial counsel's performance did not fall below reasonable professional standards. Specifically, the PCR court held that "This Court does not find the reference to the Applicant as 'Cuban' to be objectionable so as to render a failure to object to be deficient performance."

A state court's finding on a claim of ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents may require this court under 28 U.S.C. §2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in Strickland, 466 U.S. 668, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. See Hoots v. Allsbrook, 785 F.2d 1214, 1219 & n. 6 (4th Cir. 1986) ("old" § 22254(d) standard) and Williams, supra. The record supports the PCR judge's finding that the petitioner has not demonstrated that his

17

attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness with respect to this issue. At the PCR hearing, petitioner did not testify concerning the issue of the prosecutor referring to him as Cuban.  Trial counsel was questioned as to whether or not he got an indication from any of the jurors after conclusion of the case that the Cuban issue would have been a problem. Trial counsel testified "Not–I never interviewed the jurors. It was reported to me that an alternate who, frankly, worked in a law firm. .. . that she served as an alternate and she related to either someone on the prosecution side or someone who reported to me that they thought–she thought the evidence was very, very, weak against Mr. Vazquez, but that she would have a hard time not convicting him since he was a Cuban coming up here from Miami." PCR Tr. 57-58). However, as trial counsel testified, he could only relay hearsay statements of an alternate juror. Trial counsel was further questioned concerning the following statement made by the prosecutor during direct examination of Witness Harris: "Now, what was the reason–was there any other reason that the Cubans showed up at the body shop? Were they there to pick up money that day." Trial counsel responded that he could have objected as it was a "gratuitous use of the phrase Cubans" but he did not testify that he thought he should have objected and he thought the prosecutor was referring to the meeting at the garage and said "while the Cubas were there." (PCR Tr. 60). Trial counsel was also questioned concerning a statement on page 642 of the trial transcript in which the prosecutor upon direct examination of Witness Harris asked  "And Mr. Gustavo and Juan Carlos, the two Cubans, came into the office, correct?" (Trial Tr. 642). Trial counsel testified he did not object. Trial counsel was asked "So does that effect, do you think the impact of what the prosecutor was doing with "The Cubans" and "The Cubans from Miami tactic?" (PCR Tr. 62). Trial counsel responded as follows:

18

Yeah. And—but if you believe that if the jury were to credit the testimony of O'Bryant Harris, then it's a – I mean, it's a strong case. It's one-witness case corroborated by him showing up in a car with videotape and audio tape. And he doesn't speak, he's not involved in the discussions regarding money or another drug deal. And so that was –and that's what made the case defensible. The problem with the case was, you know, he's riding in–he's a passenger with the same nationality, he works with a person who's reported to be a major drug dealer.

(PCR Tr. 62-63).

Assuming, *arguendo*, that it was ineffective assistance of counsel for trial counsel not to object to the prosecutor referring at times to petitioner as Cuban or to leading questions, petitioner has failed to show prejudice. First, petitioner has not identified specific questions in his petition without which there is a reasonable probability that the result of the trial would have been different. Furthermore, counsel's decision regarding whether to lodge an objection is normally considered a matter of trial strategy which will not be second-guessed. Jackson v. Cain 2007 WL 2071664 (E.D. La., 2007), citing Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Courts accord deference to defense counsels judgments and the failure to object to questions characterized by petitioner as leading does not constitute behavior falling below an objective standard of reasonableness. Hall v. U.S.,30 F.Supp. 2d 883 (E.D.Va. 1998). As to the prosecutor's reference to petitioner as "Cuban", the Fourth Circuit has held that "the test for reversible prosecutorial misconduct has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have been prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993), *quoting* United States v. Brockington, 849 F.2d 872, 875 (4th Cir. 1988). Regarding the second component, this Court has considered the following factors relevant in determining possible

prejudice to a defendant: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduce to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983). First, petitioner has not shown that the remarks had a tendency to mislead the jury because he is Cuban and he is from Miami. This fact was brought out in the opening statement by his attorney stating "He lives in Miami. He's lived there since about 1980. He was born and raised in Cuba. And in about 1980, he was able to leave the Castro regime and come to the United States. . ." (Trial Tr. 139). Second, the remarks were more isolated than extensive, and third, as discussed previously, there was substantial evidence introduced to establish the guilt of the petitioner. Therefore, petitioner has not met the prejudice prong of Strickland, even if error was found on the part of trial counsel. Accordingly, it is recommended that respondents' motion for summary judgment be granted with respect to ground two.

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra. Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

## GROUND THREE

In ground three, petitioner argues that the PCR court erred in failing to address all issues and the state PCR counsel was ineffective in failing to file a Rule 59 motion.

Respondents argue that "infirmities in state post-conviction proceedings cannot serve as a basis for federal habeas relief. <u>Bryant v. Maryland</u>, 848 F.2d 492, 493 (4th Cir. 1988)." (Respondents' brief).

The undersigned recommends that this issue be dismissed as "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254."  28 U.S.C.A. §2254(i)(West Supp. 2001). Moreover, deficiencies in a post-conviction proceeding are not cognizable under 28 U.S.C. §2254. <u>Heyward v. Burtt</u>, 2007 WL 2021888 (D.S.C. July 6, 2007) *citing* <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 107 S.Ct. 1990 (1987); and <u>Bryant v. Maryland</u>, 848 F.2d 492, 493 (4th Cir. 1988). Additionally, a habeas court cannot grant relief based on errors occurring during state collateral review proceedings. <u>See</u> <u>Wright v. Angelone</u>, 151 F.3d 151, 159 (4th Cir. 1998). Accordingly, it is recommended that respondents' motion for summary judgment be granted as to ground three.

## VI.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondents' motion for summary judgment (document # 18) be GRANTED.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August <u>15</u>, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**